JAMES ZHOU #201385
LAW OFFICES OF ZHOU & CHINI
2151 MICHELSON DR. STE 164
IRVINE, CA 92612
PHONE: (949) 465-4850
FAX: (949) 484-4907

Attorney for Debtor and Debtor in Possession AUTO ORANGE II, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA- SANTA ANA DIVISION

| | |
|---|---|
| IN RE:<br><br>AUTO ORANGE II, LLC<br><br>Debtor and<br>Debtor in Possession | Case No.: 8:13-BK-19490-CB<br><br>NOTICE OF MOTION AND DEBTOR/DEBTOR IN POSSESSION'S MOTION TO DISMISS CASE<br><br>Hearing:<br>Date: April 16, 2014<br>Time: 10:00 A.M.<br>Ctrm: 5D, 5th Floor<br>411 W. Fourth Street<br>Santa Ana, CA 92701<br><br>(Declaration of Barry Baptiste in Support is filed concurrently herewith) |

TO THE HONORABLE CATHERINE BAUER, UNITED STATES TRUSTEE, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 16, 2014 at 10:00 a.m., or as soon after that as the matter can be heard, in Department 5D of the above-entitled court located at 411 West Fourth Street, Santa Ana, CA 92701-4593, Debtor/Debtor-in-possession Auto Orange II, LLC will

Debtor's Motion to Dismiss Case                1

move the Court to dismiss this case pursuant to 11 U.S.C. Sections 1112(b), 11 U.S.C. Section 105(a) and/or 11 U.S.C. Section 305(a). This motion is made on the bases that cause exist under 11 U.S.C. Section 1112(b) to dismiss this case, that the Court should dismiss under its equitable powers under 11 U.S.C. Section 105(a) and that dismissal would be in the best interests of the debtor and creditors under 11 U.S.C. Section 305(a).

This motion is based on this notice, the attached memorandum of points and authorities, the complete records and files of this action, on matters of which the court may take judicial notice, and any additional written and/or oral evidence presented at or before the hearing of this Motion.

*Pursuant* to *Local Bankruptcy Rule 9013-1(f) any opposition* to *this Motion must be filed and served on debtor and debtor' counsel no less than fourteen* (**14**) *days prior* to *the above hearing date. Failure* to *file and serve* a *timely response* to *this Motion may result in* a *waiver* of *your right* to *oppose the Motion and the court may grant the requested relief without further notice* to *you.*

Dated: March 26, 2014                    LAW OFFICES OF ZHOU & CHINI

                                         By:    __/S/JAMES ZHOU_____
                                                JAMES D. ZHOU
                                                Attorney for Debtor

Debtor's Motion to Dismiss Case                  2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF FACTS

Debtor Auto Orange II, LLC ("AO II") hereby request this case be dismissed. This case was filed on November 21, 2013. At the time of filing, the Debtor had hoped to use its two main assets, real property located at 32881 Camino Capistrano, San Juan Capistrano, CA 92672 (the "Chrysler Property") and real property located at 1700 North El Camino Real; San Clemente CA 92672 (the "Theater Property") as the foundation for a timely plan. The Debtor, however, has been deprived of such as the Court has granted relief from stay as to the Chrysler Property on February 5, 2014 to movant TerraCotta Realty, LLC ("TerraCotta") and while unbeknownst to AO II at the time of filing, the Theater Property, had been fraudulently transferred via quitclaim deed by the previous member Mark Spirrizzi to (presumably) an El Camino Real Estate Holdings, LLC ("ECREH"), an entity owned by Spirrizzi's "long-time friends", Anthony Ciabattoni and Frank Darras (see hereinafter).

Current members of AO II, Barry Baptiste and Craig Baptiste bought out the ownership of previous member, Mark Spizzirri at the a foreclosure sale on May 17, 2013. Craig Baptiste and Barry Baptiste, through entities that he controlled, were awarded judgment against Spizzirri in the amount of $1,550,000 plus interest in the amount of $490,904 from August 13, 2009. An amended judgment dated December 19, 2012 reflecting the judgment of $2,045,575.34 is attached to the Declaration of Barry Baptiste as Exhibit "A". In accordance with the judgment, a lien in the form of a charging order was entered against Spizzirri's interest in AO II on March 1, 2013. (Exhibit "B") This lien was foreclosed upon at the aforementioned foreclosure sale on May 17, 2013 through which the current members obtained their interest. Despite the foreclosure of his interest, Spizzirri still claimed that management of AO II was not transferred

Debtor's Motion to Dismiss Case        3

as he claimed that his wife still owned 1% of AO II.  (Contrarily, he initially represented to the bankruptcy court in his original Schedule B that he owned 100% in personal bankruptcy case, case number 8:13-bk-14702-MW;  this was later changed to him having 99% interest and his wife having 1%  interest in his last filed Amended Schedule B on  October 16, 2013.  See Exh I")  As such the current members were compelled to go back to court and filed an ex parte application on May 20, 2013 to obtain a temporary restraining order ("TRO") to prevent Spizzirri from "assigning, encumbering, transferring, or in any way disposing of" any assets belonging to AO II and to get a clarifications of the management issue.  On the same date, Notice of Pendency of Action (Lis pendens) were also filed against the Chrysler Property and Theater Property.  The Court continued the hearing on the ex parte application for one day to May 22, 2013;  on May 22, 2013 the court granted the TRO and set an Order to Show Cause ("OSC") regarding the management issue on May 31, 2013.  Unbeknownst to the current members, and the Court, Spizzirri, on May 21, 2013, "acting as manager" quitclaimed the Theater Property to respective family trust of his "long-time friends", Anthony Ciabattoni and Frank Darras for consideration of less than $100 (with presumably ECREH acting as trustee).  (In papers Spizzirri filed with the bankruptcy court, he suggest the Theater Property was quitclaimed to ECREH) (See Exh "D")   Ciabattoni and Darras have ownership interest in ECREH.  On May 22, 2013, Spizzirri, again as "acting manager" gave 1700 N. El Camino Real Estate, LLC ("1700 NECR"), an entity he owned with Ciabattoni and Darras, a second deed of trust on the Chrysler Property allegedly for a loan of $1,650,000 from 1700 NECR for a note that was supposedly executed on December 31, 2007;  this alleged note was never secured before by any AO II asset.  This was done approximately an hour before the TRO hearing.  Spizzirri filed bankruptcy on May 30, 2013, one day before the hearing of the OSC on the management issue.  After overcoming more

Debtor's Motion to Dismiss Case

4

legal hurdles put forth by Spizzirri, a charging order was granted as to the 1% interest of Spizzirri's wife in AO II on September 6, 2013. On November 1, 2013, the Court ruled that the current members had 100% interest and management rights as to AO II. (Exhibit "C") On October 31, 2013, unbeknownst to the current members and Court, Spizzirri, in violation of the TRO, quitclaimed the Chrysler Property to a Maxwell Auto, an entity formed by Spizzirri, Ciabattoni and Darras for no consideration. Maxwell Auto did not even exist at the time of the fraudulent transfer as it did not file its articles of incorporations until November 4, 2013. After a short litigation, Maxwell Auto agreed to quitclaim the Chrysler Property back to AO II on November 21, 2013.

Mr. Ciabattoni, and Mr. Darras are long-term business partners of Mr. Spizzirri; Mr. Spizzirri himself further describes them as "long-time friends" in an opposition to a motion to dismiss or convert with his accompanying declaration filed on October 7, 2013 in his personal bankruptcy case, case number 8:13-bk-14702-MW. (Exhibit "D", lines 5-6, pg 12; line 21, dec. pg 28) In fact, they are such good friends that both Ciabattoni and Darras have bankrolled Spizzirri's bankruptcy case. Despite his insolvency, Ciabattoni "loaned" him $100,000 to cover the retainer for his general insolvency counsel, Lobel, Neue, & Till, LLP (Exhibit "E") Both Ciabattoni and Darras each paid $12,500 to cover the $25,000 retainer of his special conflicts counsel, Winthrop Couchot (Exhibit "F") (One wonders how much more fees have been or will be paid by them since the fees have already exceeded the $125,000 provided on the record. See his case)

In the aforementioned opposition to dismiss or convert, Spizzirri details his ownership interest in 1700 NECR with his "long-time friends" (Exhibit "D", line 6, pg 10- line 8, pg 12; line 22; pg 27, line 23-pg 28, line 23); he further discloses that the main asset of 1700 NECR

Debtor's Motion to Dismiss Case        5

was the aforementioned "unsecured promissory note executed by Auto Orange" in favor of 1700 NECR which subsequently had been "secured by a second-priority deed of trust encumbering real property located in San Juan Capistrano, California currently leased and operated as a Chrysler automobile dealership ('Chrysler Property')" (Exhibit "D", pg 10, lines 18-22; pg 28, lines 2-5) Of course, no mention was made therein that the hypothecation of the Chrysler Property was done after Spizzirri's interest in AO II had been foreclosed upon and on the eve of a TRO disallowing such transfers. Moreover, in the pleading, Spizzirri reveals that part of his plan to reorganize was to provide "consulting services" to ECREH to develop the Theater Property in San Clemente; he estimates that net proceeds from the sale of the Theater Property would be in the amount of $2 million dollars of which he himself would receive $500,000. (See Exhibit "D", pg 8, line 27-pg 9, line 17; pg. 27, lines 3-10). Of course, he did not mention that the Theater Property was transferred out of AO II via a quitclaim deed to (presumably) ECREH for consideration less than $100. All of these transfers were made after Spizzirri had lost his membership interest in AO II, right before a TRO was issued preventing such transfers, and when he was insolvent and AO II was insolvent. (Although the illegal transfer of the Chrysler Property was done subsequently to the issuance of the TRO) Spizzirri filed for Chapter 11 bankruptcy (on May 30, 2013) one week or so after two of the transfers and a few months before the transfer of the Chrysler Property. Spizzirri made these transfers when he knew he was going to lose control and interest in the assets of AO II.

AO II has filed a lawsuit in the state court against amongst others, Ciabattoni, Darras, ECREH, 1700 NECR to undo Spizzirri's actions as mentioned hereinbefore, including reclaiming title to the Theater Property based upon, amongst other causes of actions, fraudulent transfer, intentional interference with contractual relations, conspiracy, and breach of fiduciary

duty. (Exhibit "G")  (Spizzirri has not been named in the action due to his bankruptcy filing). This lawsuit is filed in the original case in which judgment was entered against Spizzirri.  The original case started in July 2009.

Despite previously supporting the dismissal of this case due to a lack of creditors, on March 12, 2014, ECREH and 1700 NECR along with Spizzirri filed a request to continue the United States Trustee's Motion to Dismiss or Covert which was set for hearing on March 19, 2014.  (Exhibit H)  Spizzirri had not been involved with this case before.  Spirrizzi claims that he is the second largest unsecured creditor of AO II, yet he himself did not even list a claim against AO II on last-filed Schedule B in his personal bankruptcy (Exhibit"I").  These parties sought a continuance so they could propose a plan that would these aligned parties. (Curiously, the parties did not file a request to continue TerraCotta's Motion to Dismiss, but somehow with great coincidence, TerraCotta withdrew its motion on the morning of the hearing)  To facilitate such, the night (March 18, 2014) before the hearing for the motion, Spizzirri filed the missing monthly operating reports ("MOR") that had not been filed by the Debtor, namely MORs for the month of January and February 2014.  The relevant MORs are docket number 77 and number 78 on the court's docket.  In the MORs, Spizzirri declares under oath that ECREH is a secured creditor of AO II. (Exhibit J pg 16)  (Spizzirri, in the MORs he filed on behalf of the Debtor, listed four additional unsecured creditors not including the aligned parties..  In addition the four unsecured creditors, the FTB and IRS have filed relatively smalls claims in the amounts of $1571 and and $2890 respectively against AO II)  (MOR for the month of November 2013 and December 2013 were filed the Debtor but were filed untimely on January 7, 2014 and on February 4, 2014 respectively.  See docket numbers 30 and 55)

Debtor's Motion to Dismiss Case       7

The alleged plan that these aligned parties want to propose would not only allow these parties to keep the Theater Property (and its potential future proceeds in the millions of dollars), become full equity owners of AO II, but also circumvent and indeed end the state court action for fraud and other causes of action as the plan calls for AO II to release any claims against these parties. (Exhibit "H")

The parties innocuously alleged that part of the reason their request for continuance was late-filed was because they were "hoping that the Debtor might propose a plan that they could support". (Exh "H", pg 2 on top, lines 12-14)   This contention appears to be specious at best as proposing a plan by the Debtor was made exceedingly difficult, if not impossible, by the fact the Theater Property was fraudulently transferred out of the Debtor's name and the parties have been unwilling to transfer title back to AO II.   This is even so despite the fact that these aligned parties referred to ECREH as AO II's only secured creditor in the request for continuance as well as in the monthly operating reports filed by Spizzirri (see Exh "H", pg 3 on top, lines 18-20; Exh "J", pg 16); assuming *arguendo* that ECREH holds a legitimate claim against AO II, by conceding that ECREH is a *secured* creditor, the aligned parties are conceding that AO II is the rightful owner of Theater Property.  Even so, they would not transfer the real property back to AO II to allow it an opportunity to draft a plan;  they are only willing to "transfer back" the Theater Property if they end up with the real property, AO II, and avoid a lawsuit for fraud and potential punitive damages. The Debtor had engaged in settlement discussions previously as it relates to the Theater Property and the state court case;  Debtor now wonders whether previous settlement discussions with the aligned parties were engaged in- in bad faith by them and if it's purpose was just to string the Debtor along to buy time until the exclusivity period has run for the aligned parties to then propose this plan that would serve to benefit them.   If the plan goes

Debtor's Motion to Dismiss Case

8

through then it would have been like the judgment against Spizzirri, foreclosure of his interest in AO II and the fraudulent transfers never even happened.

When the case was filed, counsel for Debtor was not aware as to the manner the current members of the Debtor obtained their interest therein. At the time of filing, the current members, Barry Baptiste and Craig Baptiste had hoped to use their background, expertise, and connections to reorganize the Debtor. The current members of AO II are well-versed and connected in the real estate industry as they have been involved with large scale development projects involving some of the largest project managers in the country. Mr. Barry Baptiste has been a licensed real estate broker in California since 1986 and Mr. Craig Baptiste has been a long-time real estate developer. Specifically, AO II has an alliance with Hill International, one of the largest construction management firms in the country to develop its real properties. Unfortunately, at this point, the Debtor does not have any real property to develop and reorganize and as such, request that the Court dismiss this case.

With the relief from stay granted as to the Chrysler Property, there is currently no income coming into estate; the only income previously was derived from lease payments made by a tenant of the Chrysler Property; even then the lease payments were used to pay the deed of trust payments to TerraCotta as TerraCotta had a security interest on the lease payments. While no income is coming in, expenses are increasing with the continuation of this case with accruing attorney fees and quarterly fees due to the United States Trustee

**II. ARGUMENT**

*A.    CASE SHOULD BE DISMISSED UNDER SECTION 1112(b)*

11 U.S.C. Section 1112 (b) provides in pertinent part:

b)
(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case

Debtor's Motion to Dismiss Case          9

> under this chapter to a case under chapter 7 or dismiss a case under this chapter,
> whichever is in the best interests of creditors and the estate, for cause …
> . . . . .
> (4) For purposes of this subsection, the term "cause" includes—
> (A) substantial or continuing loss to or diminution of the estate and the absence
> of a reasonable likelihood of rehabilitation;
> …..
> (F) unexcused failure to satisfy timely any filing or reporting requirement
> established by this title or by any rule applicable to a case under this chapter;
> …..
> (H) failure timely to provide information or attend meetings reasonably requested
> by the United States trustee (or the bankruptcy administrator, if any); terests of
> creditors and the estate.
> …..

In this case, cause exists to dismiss this case. Debtor has failed to timely filed MORs for the month of November 2013 and December 2013 and did not file MORs for the month of January 2014 and February 2014. Local Bankruptcy Rule 2015-2(b) provides that a MOR must be filed no later than the 15th day of the following month for which the report is due. The MOR for November 2013 was filed on January 7, 2014 and the MOR for December 2013 was filed on February 4, 2014; the MORs for January and February 2014 were filed by Spizzirri on March 18, 2014. The MORs were all untimely filed and are cause for dismissal of the case.

Moreover, there is a continuing loss or diminution of the estate since there is no income coming into the estate. The only income previously derived from lease payments made by a tenant on the Chrysler Property which was then used to cover the deed of trust payments to TerraCotta. (TerraCotta had a security interest in the payments as well) With relief from stay having been granted, there is currently no income coming into the estate. Moreover, expenses are being incurred with the continuation of this case with accruing attorney fees and quarterly fees due to the United States Trustee.

The likelihood of the rehabilitation of the Debtor now depends on the state court lawsuit against the aligned parties since title to the Theater Property is currently not in the Debtor's name; "Rehabilitate,"… means to put back in good condition; reestablish on firm, sound basis and is not synonymous with term "reorganize." In re Lizeric Realty Corp. 188 B.R. 499

Debtor's Motion to Dismiss Case    10

(S.D.N.Y.1995). As the Theater Property has been fraudulently transferred out of AO II, the only asset of the Debtor currently is the various claims against the aligned parties related to the fraudulent transfers. While AO II believes that it will prevail, the lawsuit will likely take some time since the aligned parties have been unwilling to transfer the Theater Property back to AO II despite conceding that the Debtor is the rightful owner of the Theater Property. With litigation likely to proceed for a while, the Court should dismiss this case and allow the parties resove their dispute in the state court. Courts have dismissed cases for cause where the ability of the Debtor to reorganize depended on the success of litigation of case. [See In re Midland Marina, Inc., 259 B.R. 683, (8th Cir.BAP 2001)- Decision to dismiss, and not to convert, debtor's Chapter 11 case on showing of requisite "cause" was not abuse of bankruptcy court's discretion, where debtor's success in prosecuting its claims against city would likely determine whether it could reorganize, and entry of order of dismissal, at debtor's request, provided debtor with opportunity to prosecute its claims against city in state court. See In re Toth, 269 B.R. 587, (W.D.Pa.2001)- "Cause" existed to dismiss Chapter 11 petition filed by debtor who did not currently have any income or any business to reorganize, and who depended entirely upon successful litigation of lender liability claim to fund her plan, where debtor also had no creditors other than lender against which she had filed such claims, and Chapter 11 case was essentially two-party dispute that could be pursued in nonbankruptcy forum]

Further support that this case should be dismissed is that the presence and cooperation of current members of the Debtor, Barry Baptiste and Craig Baptiste, are needed in prosecution of the state court lawsuit and to recover the Theater Property from the aligned parties. They have been involved with litigation with Spizzirri since 2009, and acquired the judgment against Spizzirri which eventually led Spizzirri to engage in the the fraudulent transfers and other malfeasance with his "long-time friends." The Baptistes are extremely knowledgeable about the issues and facts of the state court case. Moreover, with their background, knowledge,

Debtor's Motion to Dismiss Case                 11

connections and expertise in real property development, once the Theater Property is recovered, they have the capabilities to develop or otherwise maximize the value of the Theater Property and AO II.  This is in the best interest of the estate and creditors.

While the Debtor does not believe it engaged in bad faith, bad faith is also a basis for dismissal of a case.

Earlier in the case, 1700 NECR, and ECREH along with Darras and Ciabattoni had supported TerraCotta's position that the case should be dismissed due to a lack of creditors; now, however, seeking an opportunity to file a plan which would further their scheme, and indeed legitimize their fraudulent transfers and scheme, they have changed their position 180 degrees in their request for continuance of the United States Trustee's Motion to Dismiss.  The situation, however, has not changed;  if anything, there is likely one less creditor with TerraCotta obtaining relief from stay as to the Chrysler Property.  The aligned should be estopped from changing their position. (Spizzirri, in the MORs he filed on behalf of  the Debtor,  listed four additional unsecured creditors excluding the aligned parties in the MORs. In addition the four unsecured creditors, the FTB and IRS have filed relatively smalls claims in the amounts of $1571 and and $2890 respectively against AO II. The legitimacy of these four additional creditors remains to be seen since Spizzirri's affinity for truthfulness seems to be depend on the extent of benefit he derives therefrom. Even so, the amount of creditors who are not parties to the disputes between the aligned parties and the Debtor is relatively small).

Judicial economy also requires that this case now be dismissed;  the state court case will provide a proper forum to thoroughly litigate and flesh out all claims the aligned parties and AO II may have against each other. The state court will has been involved with this same action in which the current lawsuit has been filed since 2009.  The state court is familiar with the case,

Debtor's Motion to Dismiss Case            12

general background and how the current members of AO II arrived at their ownership and how the previous member lost ownership. If this case not dismissed, litigation will likewise occur here over the same issues;  at the very least,, the Debtor will dispute the claims of the aligned parties, and they will be litigated in piecemeal fashion;  this would be redundant litigation.

### B.   *CASE MUST BE DISMISSED PURSUANT TO 11 U.S.C. SECTION 105(a)*

This court should dismiss the case pursuant to its equitable powers. 11 U.S.C. 105 (a) provides in relevant part that:

> "The Court *may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title*. No provision of this title providing for the raising of any issue by a party in interest shall be construed to preclude the court from *sua sponte, taking any action or making any determination necessary or appropriate* to enforce or implement court order or rules *to prevent **abuse of process***.  (emphasis added)

Bankruptcy courts are courts of equity and are authorized to issue any order, process, or judgment that is necessary or appropriate. Matter of Jone, 966 F.2d 169  (C.A.5 Tex 1992)  [See also In Re Baldwin-United Corp. Litigation, 765 F.2d 343, (C.A.2 N.Y. 1985);  Bankruptcy courts are inherently courts of equity with broad remedial powers. In re Cambridge Biotech Corp., 186 B.R. 9  (D.Mass.1995). Bankruptcy courts are essentially courts of equity, governed by equitable principle]  Bankruptcy court may issue appropriate orders in enforcement of its jurisdiction and to carry out provisions of Bankruptcy Code. In re Unioil, 948 F.2d 678, (C.A.10 Colorado)  The purpose of section 105(a) of this title is to give the court the power to protect its custody of the estate and the administration thereof. Matter of International Institute of The Americas, Inc. 63 B.R. 294 (D.Puerto Rico 1986).

### 1.   *THE ALIGNED PARTIES HAVE ENGAGED IN FRAUDULENT TRANSFERS*

Debtor's Motion to Dismiss Case                    13

One of the goals of the Bankruptcy Code is to prevent fraud and make sure parties are treated fairly and equitably. Fraudulent transfers are especially treated with disdain as it has its own provision despite a similar state statute which may be likewise be used to prosecute wrongdoers. 11 U.S.C. Section 548 defines fraudulent transfer and is a mechanism which may used to prevent such.

11 U.S.C. Section 548 provides:

> (a)
> (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>     (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>     (B)
>         (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>         (ii)
>             (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>             (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>             (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>             (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

Long-time friends may be construed as insiders. In Re Friedman, 126 B.R. 63, 70 (9th Cir. BAP 1991); Matter of Krehl 86 F3d 737,742 (7th Cir. 1996); In Re Standard Stores, Inc. 124 BR 318, 324 (BC CD CA 1991) .

Debtor's Motion to Dismiss Case        14

In this case, Spizzirri, the previous member of AO II, engaged in numerous fraudulent transfers with his "long-time friends" Ciabattoni, Darras and entities controlled by them, ECREH, 1700 NECR, and Maxwell, including hypothecating the Chrysler Property with a second deed of trust to 1700 NECR on an allegedly valid previous unsecured note, transferring the Chrysler Property to Maxwell and transferring the Theater Property to (presumably) ECREH. These transactions were all made for little to no consideration after Spizzirri realized that he was about to lose control and interest in the assets of the Debtor. Spizzirri was insolvent and AO II was or about to become insolvent due to these transfers. These were obviously all done for Spizzirri's, if not for all of the parties', benefit. These parties appear to have highly likely to have acted in cahoots with each other; their interests are aligned and are essentially one in the same.

Despite admitting that AO II is the rightful owner of the Theater Property, these aligned parties have been unwilling to transfer the Theater Property back to the Debtor to allow Debtor to file a timely plan. They have held the Theater Property hostage, and have engaged in settlement discussions in bad faith to stall the state court case, and strung the Debtor along until the 120-day exclusivity period so they could propose a plan which would accomplish what they initially set out to do and whitewash their fraudulent conduct. It is not surprising that these parties want to file a "plan" where they supposedly are willing to "transfer" the Theater Property back but only if they get to keep the Theater Property, its future proceeds in the millions, get ownership of AO II and avoid prosecution in the state court for their fraudulent conduct. This transfer is no transfer. If these parties are so adamant in their position that no wrong was committed, then why would ECREH so willingly convey the Theater Property back to AO II in this plan when they could just presumably prevail in state court. The alleged plan would only

Debtor's Motion to Dismiss Case    15

benefit the aligned parties and no one else; it would be a continuation of their scheme. This plan would laugh in the face of and in fact neuter 11 U.S.C Section 548.

The aligned parties may file a plan with changes in some terms or mechanisms from their initial proposal to make it seemingly more tolerable to the Court; however, any plan filed by any one of them does not take away from the fact they have engaged in fraudulent transfers. Moreover, the receiving participant to a fraudulent transaction would get to control who gets the property, when it is transferred and the terms and conditions of the transfer. This is almost surreal. No matter what, the parties have engaged in unclean hands and the Court should not assist the parties in the continuation thereof.

### *2. DEPRIVED OF RIGHTS FOUND IN 11 U.S.C. SECTION 1121(b) AND (c)*

Furthermore, by holding the Theater Property hostage, despite conceding that the Debtor is the rightful owner of the real property, the aligned parties have deprived the Debtor of the ability to file a meaningful plan within 120 days of the filing of the petition. 11 U.S.C. 1121(b) and (c) give the Debtor the exclusive right to file a plan within 120 days of the filing of the petition and if the plan is filed within this time frame, it then has another 60 days thereafter to get the plan accepted without interference from creditors and the threat of a completing plan. [See In re National Safe Center, Inc., 54 B.R. 239 (D.Hawai'i 1985)- Under section 1121(b), which provides that only debtor may file plan until 120 days after date of order for relief, debtor is not required to file plan of reorganization within 120 days after filing of an order for relief, but is given during such period the exclusive right to file a plan, if it so chooses, without having to worry about any interference by its creditors and after passage of such period of time, if debtor fails to file a plan, creditor or party in interest may then file its own plan of reorganization;

Debtor's Motion to Dismiss Case          16

Matter of Mother Hubbard, Inc., 152 B.R. 189, (W.D.Mich.1993)- Exclusivity period for filing proposed plan of reorganization serves two purposes: it allows debtor a reasonable time to obtain confirmation of plan without threat of competing plan, while at the same time ensuring that creditors will not endure unreasonable delay after debtor files for Chapter 11 relief]

In this case, the aligned parties have interfered with the estate and the administration thereof, disturbed the relationship between the Debtor and creditors called for Section 1121 (b) and (c) and violated and deprived the Debtor of its rights and leverage against creditors found therein.

### 3. VIOLATION OF SECTION 1129

Moreover, Section 1129 of the bankruptcy code requires that in order for a plan to be confirmed, it must be in "good faith and not by any means forbidden by law" and "fair and equitable". The actions of the aligned parties have not been in good faith, in contravention to the law, and have not been fair and equitable to the Debtor and the estate.

As such, the Court should dismiss this case. Any proposed plan by the aligned parties would serve to only benefit them and likely give them an end-around to the state court case to avoid prosecution for fraud. The resolution of disputes between the parties should be reached through a thorough litigious process in state court not in this court through the guise of proposed plan. If the aligned parties are correct that they committed no malfeasance, then they should prevail in the state court action and will be able to keep the Theater Property. For the foregoing reasons, this case should now be dismissed pursuant to 11 U.S.C. Section 105(a).

### C. *THE CASE SHOULD BE DISMISSED PURSUANT TO 11 U.S.C. 305(a)*

11 U.S.C. Section 305 provides in pertinent part:

(a) The court, after notice and a hearing, may dismiss a case under this title, …, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal.

Debtor's Motion to Dismiss Case          17

For the reasons enunciated above, this case should now be dismissed. "Among factors that bankruptcy courts consider in deciding whether to dismiss or suspend bankruptcy case, in exercise of their discretionary abstention authority, are consideration of who filed bankruptcy petition, availability of another alternate forum, necessity of federal proceedings to achieve just and equitable solution, expense of federal proceedings in comparison with proceedings in another forum, purpose of party seeking to remain in bankruptcy court, economy and efficiency of having bankruptcy court resolve matter, and possible prejudice to parties". In re Mazzocone, 200 B.R. 568, 575, (E.D.Pa.1996).

When the Debtor filed this case, Debtor was not aware that the Theater Property was not in it name; there is currently a state court case which would resolve the issues between the aligned parties and the Debtor. The case is filed in the original case where judgment was entered against Spizzirri so the state court is well-versed in the background and facts of the case. Judicial economy and efficiency mandates that this case be dismissed.

### III. CONCLUSION

For the foregoing reasons, this case should be dismissed. Wherefore, the Debtor request that the Court dismiss this case pursuant to 11 U.S.C. Section 1112 (b), 11 U.S.C. Section 105(a) and/or 11 U.S.C. Section 305(a).

Dated: March 26, 2014                              _____/S/JAMES ZHOU_____
                                                   JAMES D. ZHOU, Attorney for
                                                   Debtor

Debtor's Motion to Dismiss Case            18

| In re:<br>**Auto Orange II, LLC**<br><br>Debtor(s). | CHAPTER: **11**<br>CASE NUMBER: **8:13-bk-19490** |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**2151 Michelson Dr., Ste. 164**
**Irvine, CA 92612**

A true and correct copy of the foregoing document entitled (*specify*):   **Debtor/Debtor-in-Possession's Motionto Dismiss Case and Declaration of Barry Baptise in Support**     will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **3-26-14**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Counsel for TerraCotta Realty Fund, LLC: Scott Smith- ssmith@buchalter.com;  Brian Harvey- bharvey@buchalter.com; Lei**

**Counsel for El Camino Real Estate Holding, 1700 N. El Camino Real Estate, LLC, Anthony Ciabattoni, Frank Darras:  Lei Wang Ekvall- lekvall@wgllp.com; Kyra Andrassay- kandrassy@wgllp.com**
**Counsel for United States Trustee: Elizabeth Lossing- elizabeth.lossing@usdoj.gov**
**Counsel for Marc Spizzirri- dtalerico@lntlaw.com;** mneue@lntlaw.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On  **3/26/14**    , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**Honorable Catherine Bauer; United States Bankruptcy Court; Central District of California**
**Ronald Reagan Federal Building and Courthouse; 411 West Fourth Street, Suite 5165 / Courtroom 5D;**
**Santa Ana, CA 92701-4593**

**Internal Revenue Services; PO Box 7346; Philadelphia, PA  19114**

**Bankruptcy Section MSA340; Franchise Tax Board;  PO Box 2952; Sacramento, CA  95812- (original notice and motion paperwork also served to this address)**

**Nuttal & Company; 1240 N Van Buren St, Anaheim, CA 92807**

**Kubbly & Associate-  899 Calle Nuevo - San Clemente CA 92673**

**Baker & Associates- 5900 Canoga Avenue, Suite 330, Woodland Hills, CA 91367**

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June  2012*                                                                                                                              **9013-3.1.PROOF.SERVICE**

| In re: | | |
|---|---|---|
| **Auto Orange II, LLC** | Debtor(s). | CHAPTER **11**<br>CASE NUMBER **8:13-bk-19490** |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **March 26, 2014** | **James Zhou** | **/s/ James Zhou** |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 9013-3.1**